IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REBECCA PETERSEN and TARA          )
HOWARTH, Individually, and on Behalf   )
of All Others Similarly Situated,            )
                                            )
                Plaintiffs,                  )
                                            )
        v.                                   )        Case No. 1:10-cv-1506
                                            )
MARSH USA, INC., MERCER, INC., M.    )        Hon. Matthew F. Kennelly
MICHELE BURNS, ROBERT SHANNON,      )        Mag. Sidney I. Schenkier
and WHITNEY CONNAUGHTON,             )
                                            )
                Defendants.                 )

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFFS' SECOND MOTION FOR CONDITIONAL CERTIFICATION

---

Michael P. Roche
Shane W. Blackstone
Daniel J. Fazio
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone:     (312) 558-5600
Facsimile:     (312) 558-5700
Email:         mroche@winston.com

## INTRODUCTION

Plaintiffs filed their second motion for conditional certification a mere three days after the Court denied Plaintiffs' original motion for, among other deficiencies, failing to make a reasonable effort to show similarities in the putative class members' jobs.  Yet, although Plaintiffs narrow the scope of the putative class in their new motion, they offer no new arguments or evidence to support the similarly situated requirement for this new putative class.  Instead, Plaintiffs continue to rely exclusively on (i) the fact of reclassification, and (ii) the unsupported conclusion that all putative class members perform job duties similar to those of the Plaintiffs.  Their second motion thus amounts to little more than a motion for reconsideration of their first motion.

Indeed, the only substantive difference between Plaintiffs' second motion for conditional certification, and the first motion that this Court denied, is that Plaintiffs purport to submit "new evidence," consisting of Plaintiffs' declarations (Pl. Exs. A, B) and job descriptions for the three job titles that comprise Plaintiffs' new proposed class (Pl. Exs. D – F).  But this purportedly "new" evidence is insufficient to support conditional certification.  Plaintiffs' declarations are vague and conclusory and do not shed any relevant light on the job duties of any putative class members.  Written job descriptions are insufficient as a matter of law as evidence of the actual duties of putative class members.  Plaintiffs have therefore again failed to submit any adequate evidence regarding the duties of members of the putative class they seek to represent.  Denial of certification is warranted on this ground alone.

Further, Plaintiffs admit they are not similarly situated to the class they seek to represent.  Howarth conceded that her coworkers were able to carry out her primary job duties at a higher level than she; both Plaintiffs effectively admitted that they are not similarly situated to the putative class by testifying that they carried out only mundane tasks and were exclusively "doers" in Mercer's Peer Review Process. As established in the attached putative class member declarations, Plaintiffs' testimony thus places them in sharp contradistinction to the class they seek to represent, whose primary duties and responsibilities vary

significantly from those claimed by the Plaintiffs.

As established in detail below, Plaintiffs' second motion for conditional collective action certification fails to satisfy even their modest burden for conditional certification and should therefore be denied.

## RELEVANT FACTUAL BACKGROUND

### A.  Mercer's Business and Organization

Mercer is one of the world's largest human resources consulting firms, operating in more than 40 countries and employing more than 18,000 people.  (Ex. 1, Connaughton Decl., ¶ 2.) Mercer employees are called upon by Mercer to apply their sophisticated knowledge and analytical abilities to deliver an array of human resources and financial solutions, products, and services to the Company's client base of more than 15,000 businesses worldwide.  (*Id.*, ¶ 8.) Effective March 1, 2010, Mercer reclassified several jobs, including the three jobs comprising the putative class, from exempt to non-exempt status.  (Pl. Ex. I.)

### B.  Plaintiffs' Job Duties and Responsibilities

Plaintiff Petersen worked for Mercer as a Senior Defined Benefit Consulting Analyst (hereafter "Consulting Analyst"); Plaintiff Howarth was a Senior Defined Benefit Actuarial Analyst (hereafter "Actuarial Analyst").  Both worked in Mercer's Chicago office, in the Retirement, Risk & Finance Line of Business. (Ex. 2, Pepin Decl., ¶ 5.)  Petersen testified that her primary job duty (75-80% of her time) was performing benefit calculations for defined benefit plans.  (Ex. 3, Petersen Dep. Tr. at 103.)  She also testified that her responsibilities included data entry, filling out benefit certification forms, filing, and some Excel programming, duties which did not change over time.  (*Id.* at 98.)  (*See also* Pl. Ex. A, at ¶ 2 ("My main duties included data entry, running Excel calculations and filling in benefit forms.").)  Petersen never supervised more junior employees, only performed the "checker" function in Mercer's Peer Review Process on one occasion, and had virtually no client contact of any sort.  (Petersen Dep. Tr. at 93-4, 109-11.)  She rarely worked with other employees in her job title, never worked with any outside the Chicago office (*id.* at 100-01), and, in fact, has never even been to another Mercer office outside Chicago.  (*Id.* at 81.)  Petersen

never studied actuarial science or sat for any actuarial exams. (*Id.* at 104.)

Plaintiff Howarth testified that her primary job duties were preparing data in Excel spreadsheets, preparing government forms, and doing benefit calculations. (*See* Ex. 4, Howarth Dep. Tr. at 107-08.) (*See also* Pl. Ex. 2, at ¶ 2.) Howarth concedes that her colleagues were able to carry out these duties more efficiently, better, and at a higher level than she. (Howarth Dep. Tr. at 107-08.) Howarth blames her poor performance and the fact that she was admittedly "lagging behind" her coworkers on a host of "contributing factors" unique to her, including unique issues she had with her managers and supervisors. (*Id.* at 75-83, 85, 88-94, 106-08, and Ex. 4 (p. 4) thereto.) Howarth received her first formal written warning in August 2009, in which she was told, among other things, that she was "not meeting the expectations of this position" – a statement that was reiterated in her December 2009 Final Written Warning. (*Id.* at 7-8, 59-60, and Exs. 1-2 thereto.) As an Actuarial Analyst, Howarth was expected to progress along a series of actuarial exams. She passed only two of the five exams necessary to become an Associate in the Society of Actuaries, failing the first exam twice and failing the second exam once before passing with the lowest passing score. (*Id.* at 147.) Like Petersen, she also never visited another Mercer office (*Id.* at 166.) Also like Petersen, Howarth never supervised more junior employees, never once performed the "checker" function, and had virtually no client contact of any sort. (*Id.* at 127-28; 219.)

## C. The Putative Class

As an initial matter, Plaintiffs' proposed class definition requires clarification. Plaintiffs' proposed class definition is so vague that it does not give anyone proper notice of who is and who is not in the putative class. Plaintiffs define their new proposed class as follows:

> [A]ll Retirement Analysts and similarly-titled employees, including Retirement Benefits Analysts, Retirement Consulting Analysts, Sr. DB Consulting Analysts, Retirement Actuarial Analysts and Sr. DB Actuarial Analysts (hereinafter referred to as "Retirement Analysts").

(Pl.'s Br. at 1.) Plaintiffs thus attempt to collapse three distinct job titles – as well as three inapplicable job

titles – into one fictional category of "Retirement Analysts."  There exists no broad group of Mercer "Retirement Analysts" of which Plaintiffs were ever part.  Instead, "Retirement Analyst (RSC)" is a specific Mercer job title that neither named Plaintiff ever occupied.  (Ex. 2, ¶ 6.)  Moreover, even though Plaintiffs were provided a list of reclassified Level D job titles, one of the job titles listed in Plaintiffs' proposed class definition – "Retirement Benefits Analyst" – simply does not exist at Mercer.  (*Id.*, ¶ 7.)  Two of the listed job titles - "Retirement Consulting Analysts" and "Retirement Actuarial Analysts" – are Level C analyst positions that were not part of the March 2010 reclassification, and instead have been classified as non-exempt since at least March 2007.  (*Id.*)  Any ascertainable class simply must be identified by actual job titles, rather than informal job titles that may have been used by employees or invented by Plaintiffs' attorneys.[1]

Plaintiffs included the job descriptions for three actual Mercer jobs,[2] and their brief indicates that they intend these three job titles to comprise the putative class.[3]  A putative class that includes current and former occupants of these three job titles, only two of which were occupied by Plaintiffs, numbers approximately 500 current and former Mercer employees who worked in Mercer offices in 35 U.S. cities in 25 states and Washington D.C. during the relevant period.  (*Id.* at ¶¶ 3-4.)  Approximately 75 of the 500 putative class members occupied the "Retirement Analyst (RSC)" position that Plaintiffs never occupied.  (*Id.* at ¶ 3.)  None of these 75 current and former employees worked in Mercer's Chicago office; instead, almost all of them worked in Mercer's Retirement Service Centers in Milwaukee and Louisville.  (*Id.*)

## APPLICABLE LEGAL STANDARDS

At this conditional certification stage, named Plaintiffs must demonstrate that they are similarly situated to the putative class they seek to represent.  *See Aon Corp. Wage & Hour Employment Practices Litigation*, 2010 WL 1433314, at *4 (N.D. Ill. Apr. 8, 2010) (court must determine "whether there are

---

[1] Likewise, the use of the phrase "similarly-titled employees" in the class definition leads only to confusion.

[2] See Pl. Exs. C - E, job descriptions for: Retirement Analyst (RSC) (RTD100); Senior Defined Benefit Consulting Analyst (RTD151); Senior Defined Benefit Actuarial Analyst (RTD175).

[3] *See, e.g.*, Pl.'s Br. at 4, 5 (defining Retirement Analysts as falling under the above three job titles.)

allegations sufficient for the court to find that the representative plaintiff and putative class members are similarly situated."). To make this showing, Plaintiffs bear the burden "to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* To satisfy this burden, Plaintiffs "must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Vennet v. Am. Intercont'l Univ. Online*, 2005 WL 6215171, at *1 (N.D. Ill. Dec. 22, 2005). Specifically, "plaintiffs must 'demonstrate [ ] similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present.'" *Id.* at *6. "The fact that [defendant] decided to re-classify all [putative class members] does not provide the necessary common thread [to support conditional certification]." *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).

Where the plaintiffs have failed to submit proper evidence showing that their job duties were sufficiently similar to those of the putative class, denial of conditional certification is warranted. *Forney v. TTX Co.*, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006). Written job descriptions do not constitute evidence of the job duties of putative class members. *Id. See also Bunyan v. Spectrum Brands, Inc.*, 2008 WL 2959932, at *6-7 (S.D. Ill. July 31, 2008).

## ARGUMENT

## I. Plaintiffs Are Not Similarly Situated to the Putative Class They Seek To Represent

Plaintiffs claim to have "provided evidence that all Retirement Analysts performed data entry and manipulation, ran excel and other calculations on Defendants' GRS, and filled in paperwork and other forms for Defendants' clients." (Pl. Br. at 10.) In fact, as demonstrated below, Plaintiffs have at most provided evidence that they alone carried out such duties. Plaintiffs have provided no evidence whatsoever that the duties and responsibilities of other putative class members were similar and, indeed, Plaintiffs' admissions, as well as Defendants' evidence, lead to a contrary conclusion.

A.     Plaintiffs' Continued Reliance on Reclassification is Misplaced

In their latest conditional certification attempt, Plaintiffs again invoke the fact that Plaintiffs' and other putative class members' job positions were all reclassified from exempt to non-exempt.  (*E.g.*, Pl.'s Br. at 6-8.)  The Court has already once rejected the reclassification as a basis for conditional certification in denying Plaintiffs' first motion for conditional certification.  That Plaintiffs have now reduced the scope of the putative class does not breathe new life into their reclassification arguments.  Reclassification is not relevant because the mere act of reclassifying employees from exempt to non-exempt does not constitute a violation of any law.  *Clarke v. JPMorgan Chase Bank*, 2010 WL 1379778, at *22 (S.D.N.Y. Mar. 26, 2010) ("[T]he mere fact that an employee was reclassified cannot establish an employer's liability for the period prior to the reclassification.")  Because the reclassification cannot serve as evidence of wrongdoing, Plaintiffs cannot show that they and potential plaintiffs together were victims of a common policy or plan *that violated the law* for purposes of conditional certification.  *Mike*, 274 F. Supp. 2d at 221 ("[t]he fact that [defendant] decided to re-classify all [putative class members] does not provide the necessary common thread" to support a collective action).  Moreover, as detailed below (pp. 8-10), Plaintiffs' cited cases rely on substantial evidence *independent of any reclassification* to find the similarly situated requirement met.  Simply put, Plaintiffs cannot satisfy their conditional certification burden by continued reference to reclassification.

B.     Plaintiffs Are Not Similarly Situated to Occupants of the "Retirement Analyst (RSC)" Position They Never Occupied

Plaintiffs do not even purport to present evidence regarding the actual job duties of occupants of the Retirement Analyst (RSC) position they seek to include in the putative class.  Notwithstanding that Plaintiffs created a fictitious "Retirement Analyst" heading in which they seek to lump the entire putative class, the Retirement Analyst (RSC) position is a distinct job title within Mercer, consisting primarily of certain employees who work in Mercer's Retirement Service Centers (RSCs) in Milwaukee and Louisville.

(Ex. 2, ¶ 3.)  None of the individuals identified by name in Plaintiffs' declarations occupied the Retirement Analyst (RSC) position.  (*Id.*, ¶ 9.)  Indeed, given that no employee in the Retirement Analyst (RSC) position has been based in the Chicago office during the relevant time period (*Id.,* ¶ 3), it is unlikely Plaintiffs have ever met an employee in that job title.

Plaintiffs' only submission relative to the Retirement Analyst (RSC) position is a written job description for that position.  (Pl. Ex. D.)  Written job descriptions, however, do not constitute evidence of actual job duties for the purposes of conditional certification.  *Forney,* 2006 WL 1030194, at *3.  In any event, comparing the Retirement Analyst (RSC) job description to those of named Plaintiffs reveals substantial dissimilarities in the job duties.  Most notably, the Retirement Analyst (RSC) position is part of Mercer's unique Retirement Service Center function. Further, according to the Retirement Analyst (RSC) job description, one-third of their time is spent "reviewing and checking client valuations and data work prepared by junior analysts," a responsibility Plaintiffs specifically disavow ever having performed. (Petersen Dep. Tr. at 93-4; Howarth Dep. Tr. at 127.)  The job description – Plaintiffs' only submission relative to the Retirement Analyst (RSC) position – thus fails to establish that Plaintiffs were similarly situated to Retirement Analysts (RSC). Plaintiffs have therefore failed to submit evidence regarding the duties of even a single Retirement Analyst (RSC); these employees should not be included in a collective class with Plaintiffs.  *Forney,* 2006 WL 1030194, at *3 (denying conditional certification because Plaintiffs did not submit evidence of other class members' job duties beyond a job description).

C.      Plaintiffs Are Not Similarly Situated to Occupants of Their Job Positions

1.      Plaintiffs Present No Evidence of Job Duties of Others in Their Positions

The only evidence Plaintiffs purport to submit regarding the job duties of others in their positions are their own declarations and job descriptions for their positions.  These documents, however, do not constitute evidence of the job duties and responsibilities of other occupants of their job titles.

Howarth's declaration purports to list the names of fellow "Retirement Analysts," but offers no facts

of any kind concerning those employees' job duties. Her only other statements regarding putative class members are vague and conclusory at best ("The other Retirement Analysts I worked with shared similar duties as I did"; "Other Retirement Analysts also worked primarily as 'Doers'.")[4] Petersen's declaration, as well, lists only the names of fellow "Retirement Analysts." (Pl. Ex. 2, at ¶¶ 6 - 7.) The only personal knowledge she purports to offer regarding specific job duties of other putative class members – and indeed the only such evidence in all of Plaintiffs' papers – is the vague, abstract statement: "I worked with Josh Gordon and Andrew Ong and other Retirement Analysts and witnessed them doing the same work as I did." (*Id.* at ¶ 9.) Her deposition testimony, however, clarifies that she only worked with Gordon and Ong on a "couple of client projects." (Petersen Dep. Tr. at 99.)

The only other submission relative to occupants of Plaintiffs' job titles are written job descriptions for those jobs. (Pl. Exs. E, F.) As noted above, however, written job descriptions are insufficient to establish conditional certification. *Forney,* 2006 WL 1030194, at *3. Plaintiffs have not submitted declarations from any other putative class members or any evidence at all corroborating their vague and conclusory assertions that occupants of their positions shared the same duties that Plaintiffs claim to have had.[5]

Indeed, it is Plaintiffs' dearth of relevant evidence that distinguishes their request for conditional certification from the cases upon which Plaintiffs so heavily seek to rely. In each of the cases cited by Plaintiffs, the court was provided substantial evidence concerning the job duties of putative class members:

- In *Herring v. Hewitt Assoc., Inc.,* 2007 WL 2121693, at *5 (D.N.J. July 24, 2007), the court relied on testimony of 10 deponents in finding that named plaintiffs were similarly situated to the putative class.

- In *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008), the court relied on declarations

---

[4] Two of the people she names – Alexander Li and Edward Cha – did not in fact work in any of the three job titles comprising the putative class. (*See* Ex. 2, ¶ 9.)

[5] Contrary to Plaintiffs' claim that Defendants have had "exclusive access" to the putative class, Plaintiffs have had seven months and plenty of opportunity to access putative class members. The putative class contains hundreds of former employees, many of whom Plaintiffs apparently knew personally. Plaintiffs also have access to current employees. Plaintiffs' counsel's website advertises the case, and Plaintiffs' counsel's sister is a current Mercer employee in Chicago. She referred Petersen to her brother, lead counsel for Plaintiffs. (Petersen Dep. Tr. at 21-22.)

from five putative class members who worked in three states in finding that the putative class shared the same essential job responsibility. (*See also* Ex. 5, excerpts of declarations relied upon by court.)

- In *Olmsted v. Residential Plus Mortgage Corp.*, 2008 WL 5157973 (N.D. Ill. Dec. 9, 2008), although there were only 36 putative class members, the court relied on "affidavits from other employees with the same or similar jobs" to conditionally certify the class. *Id.* at *3.

- In *Perez v. Radioshack Corp.*, 2003 WL 21372467 (N.D. Ill. June 13, 2003), the court undertook an evidentiary hearing before ruling on conditional certification (*Id.* at *1), in which it elicited volumes of detailed testimony from plaintiffs and from company witnesses regarding the details of the duties of putative class members and a number of policies applicable to them. *Id.* at *2 -7.

- In *Rottman v. Old Second Bancorp., Inc.*, 2010 WL 3386007, at *2 (N.D. Ill. Aug. 25, 2010), the court relied on declarations from named plaintiffs and an additional putative class member, who had worked in a total of four of defendant's locations, and all of whom attested to personal knowledge that all occupants of their position were subject to the same policies, as well as evidence of policies tending toward non-exempt status that were applicable to the entire putative class. (*See also* Ex. 6, excerpts of declarations relied upon by court.)

- In *Smallwood v. Illinois Bell Tel. Co.*, 2010 WL 1838562, at *4 (N.D. Ill. May 6, 2010), the court relied on "job-related declarations of the four named Plaintiffs and 39 opt-in Plaintiffs…[that] detail[ed] a number of overlapping essential job duties," in granting conditional certification.

- In *Witteman v. Wisconsin Bell, Inc.*, 2010 WL 446033, at *1 (W.D. Wis. Feb. 2, 2010), the court relied on "affidavits of 32 [putative class members] … in which the employees aver that their job responsibilities were substantially the same" to conditionally certify the class.

- In *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 215-16 (E.D. Mich. Apr. 16, 2010), the court relied on declarations of 35 named and opt-in Plaintiffs in granting conditional certification.

Thus, in **none** of the cases repeatedly cited by Plaintiffs was a collective class conditionally certified solely upon the conclusory allegations of the named plaintiffs and written job descriptions, as Plaintiffs attempt to do here.

Instead, this case is most similar to *O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246 (D. Mass. 2006). There, as here, both named plaintiffs worked in a single division of a single office of a national company, yet sought nationwide certification of a class comprising three job titles. There, as here, the only evidence the plaintiffs offered in support of conditional certification were their own affidavits, which failed to establish personal knowledge of the employment situation of putative class members outside their job or office. *Id.* at 250. In denying conditional certification, the court noted:

> Under the FLSA, the question of whether an employee is properly exempted involves a fact-intensive inquiry into his/her job responsibilities and autonomy, the management style of the employee's supervisor and whether that employee worked over 40 hours per week. One cannot merely assume, as the plaintiffs have here, that [Defendant's] employees throughout the country were subject to the same "policy" of an allegedly improper exemption. **Plaintiffs need to show more**.

*Id.* (emphasis added). Here as well, Plaintiffs have essentially asked this Court to assume that the putative class is similarly situated to Plaintiffs, without giving the Court any basis for doing so. Conditional certification should be denied.

2.  **Plaintiffs Admit They Are Not Similarly Situated to Occupants of Their Job Positions**

Aside from the insufficiency of Plaintiffs' evidence, Plaintiffs essentially concede they are not similarly situated to even the putative class members in their job positions. Howarth explicitly admitted that she "lagged behind" her coworkers and that they were able to carry out her primary job duties at a higher level than she. (Howarth Dep. Tr. at 75-77, 107-08.) Indeed, Howarth testified at length about a series of "contributing factors" unique to her that caused her not to be able to carry out her job duties at the level of her colleagues. (*Id.* at 81-83, 85, 88-94, 106-08.) Moreover, both Plaintiffs effectively admitted that they are not similarly situated to the putative class by testifying that they carried out only mundane tasks and

were exclusively "doers" in Mercer's Peer Review Process. As the attached putative class member declarations make clear, Plaintiffs' testimony in this regard places them at odds with other occupants of their job titles.[6] While these declarations are not submitted to challenge the merits of Plaintiffs' FLSA claim, they do conclusively establish that a determination of the exempt status of Howarth and Petersen will have no bearing on such a determination as to putative class members, whose primary duties and responsibilities vary significantly from those claimed by the named Plaintiffs.

- **"Doers" versus "Checkers":** Plaintiffs insisted at deposition that they functioned exclusively as "doers" in Mercer's "do, check, review" peer review process. (Petersen Dep. Tr. at 93-94; Howarth Dep. Tr. at 127.)[7] In their Brief, Plaintiffs claim without evidence that the putative class also performed almost exclusively as "doers." (Pl. Br. at p. 5). In fact, the only evidence regarding putative class members shows that Plaintiffs' status as serial "doers" at Mercer makes them the exception in this regard.[8] Indeed, according to putative class members, Plaintiffs failure to perform the checker function places them well outside the norm for those in their job positions.[9] As one declarant put it, "Normally, actuarial analysts progress into the checker role over time. There are, however, some actuarial analysts who do not progress into the checker role. These are the exception and not the norm, and the reason they do not progress is

---

[6] *See* Declarations of Richard Atamian (Ex. 7), Aaron Clark (Ex. 8), Francis Feger (Ex. 9), Belinda Harris (Ex. 10), Jacob Haslwanter (Ex. 11), William Holmes (Ex. 12), Sheryl Kadakia (Ex. 13), Kevin Mospan (Ex. 14), William Oppenheim (Ex. 15), and Nicholas Zappia (Ex. 16).

[7] Plaintiffs' allegation that the putative class members were "doers," even if true, is not a relevant common policy because the FLSA regulations are clear that the fact that an employee's work is subject to review is irrelevant to one's exempt status. *See* 29 CFR § 541.202(c) ("The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.").

[8] *See* Atamian Decl., ¶ 5 (40% of his time as checker); Clark Decl., ¶ 4 (performs checker function for half of his clients); Feger Decl., ¶ 2 (performs checker function); Harris Decl., ¶ 4 (checking is one of her primary duties); Haslwanter Decl., ¶ 4 (performs checker function for half of his clients); Holmes Decl., ¶ 5 (performs in checker function "quite often", increased over time, but always performed some checker function); Kadakia Decl., ¶ 2 (60-75% of her time as checker); Mospan Decl., ¶ 8 (spends 30% of time as checker); Oppenheim Decl., ¶¶ 3, 5 (performs checker function); Zappia Decl., ¶ 4 (some checker duties).

[9] The fact that putative class members often act as "checkers" *is* relevant to their exempt status. *See* 29 CFR §541.703(b)(3) (checking work of subordinates to determine whether the product is satisfactory is exempt work).

because they are not performing at the expected level."[10]

• **Primary Job Duties:**      While Plaintiffs maintain that their primary job duties were limited to data entry, filling in forms, and performing benefit calculations (Pl. Ex. A, ¶ 2; Pl. Ex. B, ¶ 2), putative class members testify to performing primary job duties that do not resemble these and that Plaintiffs in fact deny ever having performed.  For example, Howarth and Petersen testified that they never served in a project management role or supervised other employees.  (Petersen Dep. Tr. at 109-11; Howarth Dep. Tr. at 219.) By contrast, other putative class members routinely do so.[11]  Likewise, Howarth and Petersen testified to having virtually no client contact whatsoever.  (Petersen Dep. Tr. at 109-11; Howarth Dep. Tr. at 127-28.) By contrast, other putative class members routinely have significant client contact.[12]  In addition, others in Plaintiffs job titles worked in niche groups of which Plaintiffs were never part, where they carried out duties completely unlike those claimed by Plaintiffs.[13]

• **Education and Actuarial Training:**  As noted above, Howarth barely got through two of the five tests required to become an Associate in the Society of Actuaries (ASA), and testified that she did not use the knowledge used in the ASA certification process in her job at Mercer.   (Howarth Dep. Tr. at 147.) Petersen had no actuarial training whatsoever, and never sat for any ASA exams.  (Petersen Dep. Tr. at

---

[10] Atamian Decl., ¶ 5. *See also* Mospan Decl., ¶ 8 ("most people in my position act in a 'checker' role at least to some extent"); Zappia Decl., ¶ 4 ("My experience has been that if you're an experienced and trustworthy Consulting Analyst, you will have significant checker responsibilities."); Kadakia Decl., ¶ 11 ("Since 2006 or 2007, almost everyone in my position… has done at least some 'checking,' even brand new employees.").

[11] *See* Atamian Decl., ¶ 6 (serves as project manager for one client); Feger Decl., ¶ 3 (serves in project manager role and supervises lower level analysts); Harris Decl., ¶ 4 (one of her primary duties is project management); Haslwanter Decl., ¶ 6 (serves as project manager for two clients); Kadakia Decl., ¶ 2 (one of her primary job duties is project management); Mospan Decl., ¶ 7 (performs project manager duties); Oppenheim Decl., ¶¶ 2, 4 (one of his primary job duties is project management).

[12] *See* Atamian Decl., ¶ 6 (routine client contact with one client); Feger Decl., ¶ 2 (regular client contact); Holmes Decl., ¶ 2 (weekly client contact); Kadakia Decl., ¶ 3 (regular client contact); Mospan Decl., ¶ 9 (client contact).

[13] *See* Feger Decl., ¶ 3 (worked in U.S. Retirement Mercer Yield Team where he oversaw junior analysts and studied various discount rate setting tools); Harris Decl., ¶¶ 2, 6-9 (worked in International Group wherein she would supervise up to 30 international colleagues on special projects); *see also* Atamian Decl., ¶ 3 (one of primary duties was non-discrimination testing, a duty Howarth denied ever performing (Howarth Dep. Tr. at 135)).

104.) Mercer will therefore likely have no basis to assert they were properly classified as exempt learned professionals.[14] By contrast, other putative class members have progressed far along the actuarial exam process and testify that the knowledge gained in that process is essential to their job duties.[15]

As the foregoing makes clear, Plaintiffs' duties and responsibilities do not resemble those of the putative class they seek to represent in areas that are directly relevant to their exempt status. Thus, a determination of the propriety of the exempt status of Plaintiffs will have no bearing on such a determination as to other putative class members. Conditional certification should therefore be denied.

D.   Plaintiffs Are Not Similarly Situated to Putative Class Members Outside Mercer's Chicago Office

Although Plaintiffs attempt to certify a nationwide class, they fail to present any evidence that they are similarly situated to putative class members outside Mercer's Chicago office. Howarth's declaration ignores the issue altogether, and she admitted at deposition that she had never visited another Mercer office and did not know of any employees in any other Mercer office. (Howarth Dep. Tr. at 166.) Petersen's declaration merely states that she was "aware of" a few employees outside the Chicago office, but there is nothing to suggest she worked with them, witnessed them carrying out their duties, or has any personal knowledge of their duties. (Pl. Ex. A, ¶ 7.) As discussed *supra*, the job descriptions submitted by Plaintiffs are insufficient to establish the duties of employees in those job titles.

The record is thus devoid of evidence that job duties of non-Chicago employees were sufficiently similar to those of Petersen and Howarth to join them together in a collective action. And, in fact, declarations submitted by Mercer indicate that the duties of employees, even within the same job title, can

---

[14] *See* 29 C.F.R. § 541.301 (defining and delimiting Learned Professional Exemption and including actuarial sciences among the fields encompassed by exemption).

[15] *See* Atamian Decl., ¶ 8 (passed 5 ASA exams and one enrolled actuary exam); Clark Decl., ¶¶ 1, 7 (holds Master's degree in applied mathematics; passed 3 ASA exams); Harris Decl., ¶ 3 (Master's degree in economics); Haslwanter Decl., ¶ 1 (completed coursework for Master's degree in applied mathematics); Holmes Decl., ¶ 6 (completed 4 ASA exams); Kadakia Decl., ¶ 9 (same); Mospan Decl., ¶ 3 (same); Oppenheim Decl., ¶ 8 (completed 6 actuarial exams) Zappia Decl., ¶ 5 (passed 5 ASA exams and one enrolled actuary exam)).

vary significantly depending on office location.[16]   Accordingly, the Court should deny Plaintiffs' request for notice as to employees outside Mercer's Chicago office.   *See Shiner v. Select Comfort Corp.*, 2009 WL 4884166, at *4 - 5 (N.D. Ill. Dec. 9, 2009) (no notice outside Illinois where, among other factors, plaintiffs worked only in Illinois, submitted affidavits only from Illinois employees, and affiants did not testify to the duties of putative class members outside of Illinois); *Collazo v. Forefront Educ., Inc.*, 2010 WL 335327 (N.D. Ill. Jan. 28, 2010) (no notice outside Illinois where plaintiffs failed to provide affiant with personal knowledge of workplaces outside Illinois); *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 788-89 (N.D. Ill. 2007) (notice limited to Chicago as named plaintiffs worked only in that territory).[17]

## II.      If the Court Grants Notice, the Method and Form of Notice Should Be Modified

Were the Court to grant conditional certification as to some or all of Plaintiffs' proposed class, it should modify the form and method of notice proposed by Plaintiffs.   As to the form of notice, reference to the non-applicable job titles (see *supra*) should be stricken to avoid confusion.   Second, Paragraph V should be modified to notify recipients that opt-in Plaintiffs may have their depositions taken, as well as an admonition that they may be liable for a proportionate share of Defendants' costs should Defendants ultimately prevail.   Finally, the sentence that the Court has not taken a position on the merits (Paragraph II)

---

[16] *See* Ex. 17, Donnell Decl., ¶ 9 (contrasting the level of responsibility, discretion, and independent judgment with which employees in the same job carried out their duties in Chicago versus in the Detroit office, in light of the differences in the quantity and nature of work available in the offices); Ex. 13, Kadakia Decl., ¶ 12 (contrasting Dallas and Chicago offices and stating that because the duties of her position can vary greatly depending on the client, and clients vary widely from office to office, employees' duties are very different from office to office).

[17] Plaintiffs' cases do not support a nationwide class here.   In *Herring*, the named plaintiffs had worked in New Jersey and Texas, and the 10 deponents on whose testimony the court relied worked in offices in 4 states. (*See* Ex. 18, excerpts of declarations sufficient to demonstrate same.)   In *Jirak*, nationwide notice was granted on the strength of declarations from 5 putative class members who had worked in 3 states and who attested to what the court found to be similar job duties.  566 F. Supp. 2d at 848. (*See also* Ex. 5.)   In *Perez*, the court granted nationwide certification only after an evidentiary hearing in which, among other things, a plethora of relevant, uniform, and undisputedly nationwide policies were in evidence.  2003 WL 21372467, at *2-6.  In *Rottman*, statewide notice was granted where the 3 declarants testified to having worked in 4 of defendants' branches.  2010 WL 3386007, at *1-2.  (*See also* Ex. 6.)  In *Smallwood*, the court specifically noted that the named Plaintiffs and 69 opt-in plaintiffs had collectively worked at 19 locations statewide.  2010 WL 1838562, at *1 n.3.   In *Witteman*, statewide notice was issued where 32 declarants testified to having worked in at least seven of defendant's branches.   (*See* Ex. 19, sampling of declarations relied upon by court.)  In *Wlotkowski*, statewide notice was granted where the 11 named plaintiffs and 60 opt-in plaintiffs had collectively worked at 12 of defendants' locations throughout Michigan.  267 F.R.D. at 214-15.

and the admonition against contacting the Court with questions (paragraph IX) should be emphasized to ensure they are read and understood.

As to the method of notice, first, Plaintiffs' request for the phone numbers of putative class members should be rejected on privacy grounds. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989) (requiring only names and last known addresses of putative class members); *Howard v. Securitas Security Servs., USA Inc.*, 2009 WL 140126, at *9 (N.D. Ill. Jan. 20, 2009) (denying plaintiffs' request for phone numbers on privacy grounds). Second, Plaintiffs' request for email addresses and email notice[18] should be rejected on privacy grounds and because of the virtually unlimited potential for recipients to modify and re-distribute an emailed notice. *See, e.g., Espenscheid v. DirectSat USA, LLC*, 2010 WL 2330309, at *14 (W.D. Wis. June 7, 2010) (denying plaintiffs' request to send notice by email because of potential for recipients to modify and re-distribute email messages and declining to require defendants to provide email addresses of former employees), and cases cited therein.

## CONCLUSION

In their first motion for conditional certification, Plaintiffs submitted evidence that the putative class members had been reclassified and that many of the job titles had the word "analyst" in them. In addition, they submitted faulty evidence that Plaintiffs shared similar job duties to the putative class members. In denying Plaintiffs' motion, the Court noted, among other things, that Plaintiffs had not made "any reasonable effort to show similarities in people's jobs…" (Ex. 20, p. 3.) Although Plaintiffs' second attempt at conditional certification narrows the scope of their putative class, it fails to present anything more than different faulty evidence regarding the similarity in job duties. And, despite the narrowed scope of the putative class, there remain significant, relevant differences between Plaintiffs and the class they seek to represent, such that collective action treatment is untenable. For these reasons, Defendants respectfully request that the Court deny Plaintiffs' second motion for conditional collective action certification.

---

[18] Plaintiffs request email notice on p. 11 of their Brief, but request notice via U.S. mail only on p. 12.

15

Respectfully submitted,

Marsh USA, Inc., Mercer (US) Inc., M. Michele Burns, Robert Shannon, and Whitney Connaughton

By:      _____/s/ Michael P. Roche_____
                      One of Their Attorneys

Michael P. Roche
Shane W. Blackstone
Daniel J. Fazio
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone: (312) 558-5600
mroche@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2010, I caused a copy of the foregoing to be served on counsel for Plaintiff via the court's electronic filing system:

James B. Zouras
Ryan F. Stephan
Stephan Zouras, LLP
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601


/s/ Michael P. Roche