IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REBECCA PETERSEN and TARA HOWARTH, individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) Case No. 10 C 1506 |
| MARSH USA, INC., MERCER, INC., M. MICHELE BURNS, ROBERT SHANNON, and WHITNEY CONNAUGHTON, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rebecca Petersen and Tara Howarth have sued Mercer, Inc., Marsh USA, Inc., and corporate officers of Mercer and Marsh under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), seeking unpaid overtime wages and other relief. For the second time, plaintiffs have moved the Court for an order conditionally certifying this case as a collective action and approving a notice to be sent to other similarly situated employees, notifying them of the pendency of the case and their right to join it as plaintiffs. For the reasons stated below, the Court grants plaintiffs' second motion for conditional certification in part.

## Background

Marsh and Mercer are subsidiaries of Marsh & McLennan Companies, Inc., a U.S.-based insurance and professional services firm. Mercer provides human resources consulting services to domestic and international clients. Plaintiffs are former

Chicago-based employees in Mercer's Retirement, Risk and Finance Line of Business. Petersen served as a Senior Defined Benefit Consulting Analyst ("Consulting Analyst") with Mercer from July 2, 2007 until April 2, 2010. Howarth served as a Senior Defined Benefit Actuarial Analyst ("Actuarial Analyst") with Mercer from April 7, 2008 until March 1, 2010. Prior to March 2010, Mercer had classified both plaintiffs as "exempt" employees under the FLSA and paid them an annual salary without additional overtime pay. The FLSA provides that all non-exempt employees must be paid one and one-half times their regular rate of pay for each hour worked above forty hours per week. *See* 29 U.S.C. § 207(a)(1). Plaintiffs allege that they regularly worked more than forty hours per week while they were classified as exempt employees.

As of March 1, 2010, Mercer reclassified a number of positions from exempt to non-exempt status. Employees in these positions thus became eligible to receive overtime pay. Plaintiffs' positions—Consulting Analyst and Actuarial Analyst—were among those reclassified in this policy change. Plaintiffs allege that their reclassification occurred without any corresponding change in their job duties and that they were improperly classified as exempt employees prior to March 1, 2010. Plaintiffs seek compensation for the time they worked on top of the regular forty-hour work week prior to that date.

On July 13, 2010, plaintiffs filed their first motion for conditional certification of the case as a collective action. They proposed a group of notice recipients consisting of

> [a]ll individuals who were employed, or are currently employed, by one or more Defendant [sic], their subsidiaries or affiliated companies, as Job Level D employees or any other similarly titled position at any time during

> the relevant limitations period whose position was reclassified from exempt to non-exempt on March 1, 2010.

Pls.' Mem. in Support of Mot. to Conditionally Certify at 2. Defendants opposed the motion, arguing that plaintiffs sought "a collective action of unprecedented scope and diversity." Defs.' Mem. in Opp. to Mot. to Conditionally Certify at 1. Defendants noted that plaintiffs' proposed collective action would include employees with "79 distinct job titles" working in "19 different Lines of Business and Functions." *Id.* Plaintiffs' proposed definition would have encompassed approximately 1,700 employees. Pls.' 2d Mot. to Conditionally Certify ("Pls.' 2d Mot.") at 2 n.1.

The Court denied plaintiffs' motion in an oral ruling on September 20, 2010. The Court found that plaintiffs failed to identify similarities between themselves and the proposed notice recipients sufficient to support conditional certification. In particular, the Court noted that plaintiffs identified only two commonalities: the alleged mass reclassification of "job level D" employees and the fact that approximately fifty of eighty reclassified job titles were "analyst" positions of some sort. Sept. 20, 2010 Tr. 3:2-17. Though these similarities were insufficient to support a collective action of the breadth sought by plaintiffs, the Court noted that "there might be some narrower grouping of people that might pass muster." *Id.* 4:3-4.

Plaintiffs filed the present motion on September 23, 2010. They proposed sending notice to a smaller group of current and former Mercer employees who held any of three different job titles: Consulting Analyst, Actuarial Analyst, or "Retirement Analyst [(RSC)]." Pls.' 2d Mot. at 1, 4. In an opposition brief, defendants countered that this definition would encompass "approximately 500 current and former Mercer

employees," about seventy-five of whom held the "Retirement Analyst (RSC)" position and thus did not share a job title with either plaintiff. Defs.' Mem. in Opp. to Pls.' 2d Mot. ("Defs.' 2d Mem.") at 4. Plaintiffs conceded in a reply brief that they never held the title "Retirement Analyst (RSC)" and further narrowed their motion's scope by eliminating the seventy-five employees with this title from their proposed group of notice recipients. As such, plaintiffs' proposed collective action now encompasses approximately 425 Consulting Analysts and Actuarial Analysts ("putative notice recipients"). Pls.' Reply at 1 n.1.

In support of conditional certification, plaintiffs offer the following evidence: their own allegations, sworn declarations and deposition testimony; Mercer's job descriptions for the positions held by plaintiffs; a consent form and sworn declaration from one opt-in plaintiff, Asta Gurklys; evidence of Mercer's uniform reclassification of putative notice recipients to non-exempt status under the FLSA; and deposition testimony from another Mercer employee, Amy Pepin.

## Discussion

The FLSA allows plaintiffs to bring a collective action to recover unpaid overtime compensation on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions under the FLSA require would-be plaintiffs to opt in. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).

Congress and the Seventh Circuit have not defined the procedures courts should use in certifying a collective action. Courts in this district typically employ a two-step certification process. *See Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill.

2008). At the first stage, a plaintiff must "show there are similarly situated employees who are potential claimants." *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). To establish this at the first stage, "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). If a plaintiff meets this burden, the court will conditionally certify the collective action and authorize the plaintiff to give notice to putative members. *Id.*

At the second stage, following discovery and completion of the opt-in process, the court may reexamine the conditional certification if called upon to do so. *Id.* At this stage, the court "determine[s] whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Id.* (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008)). In a case where the court finds insufficient similarities, "it may revoke the conditional certification." *Russell*, 575 F. Supp. 2d at 933.

1.  **Conditional Certification**

Plaintiffs contend that conditional certification is appropriate because they share titles, job descriptions, and significant job responsibilities with all putative notice recipients. Pls.' Reply at 4. As evidence of a common policy or plan in violation of the FLSA, plaintiffs point to defendants' collective reclassification of putative notice recipients from exempt to non-exempt status as of March 1, 2010. Pls.' 2d Mot. at 6-8; Pls.' Reply at 8-9. Specifically, plaintiffs contend that they and putative notice recipients

were "misclassified as exempt and deprived of overtime pay for all time worked over 40 hours per week." Pls.' 2d Mot. at 6. Plaintiffs also note that the March 2010 reclassification was "made on a job-by-job basis - <u>not</u> an individual employee basis." *Id.* (emphasis in original).

Defendants' central argument is that plaintiffs "have provided no evidence whatsoever that the duties and responsibilities of other putative class members were similar" to their own responsibilities. Defs.' 2d Mem. at 5. They contend that the evidence plaintiffs rely upon is "vague and conclusory" and "insufficient to establish conditional certification." *Id.* at 8. They also argue that plaintiffs have failed to provide evidence of a common policy or plan in violation of law "[b]ecause the reclassification cannot serve as evidence of wrongdoing." *Id.* at 6.

The Court concludes that plaintiffs' evidence, though less than overwhelming, is sufficient to make the "modest factual showing" of commonality required at step one of the FLSA certification process. Plaintiffs' first motion for conditional certification failed to show any commonalities beyond the reclassification and a vague similarity among the job titles of the reclassified employees. Plaintiffs have now narrowed the group of putative notice recipients considerably, such that only employees with the exact same job titles as plaintiffs will receive notice of the pendency of the case. *See* Pls.' Reply at 1 n.1.

Plaintiffs also provide evidence that persons with these job titles shared common job duties and qualifications. For example, Mercer's job description for Consulting Analysts reveals that approximately fifty percent of their time is spent "program[ming], review[ing] and develop[ing] annual client liabilities using actuarial principles and

-6-

Mercer's Global Retirement System (GRS)" or "[c]heck[ing] and [a]nalyz[ing] actuarial valuation results." Pls.' 2d Mot., Ex. E at 1. It also indicates that Consulting Analysts must have, at a minimum, a "[b]achelor's degree in Math, Statistics, Actuarial Science or [a] related field[.]" Id. at 2. The job description for the Actuarial Analyst position includes these responsibilities and qualifications as well. Pls.' 2d Mot., Ex. F at 1-2.

The declarations submitted by plaintiffs suggest that plaintiffs and putative notice recipients engaged in similar work. In her declaration, plaintiff Petersen asserted that she was generally referred to as a "Retirement Analyst" despite having other titles, including Consulting Analyst. Pls.' 2d Mot., Ex. A ¶ 1. She stated that she worked with "at least 25 other Retirement Analysts" in Chicago, all of whom "shared similar duties" with her. Id. ¶¶ 6, 9. Similarly, plaintiff Howarth alleges that "[d]efendants referred to [her] job [title] as [A]ctuarial [A]nalysts [sic] or [R]etirement [A]nalyst." Pls.' 2d Mot., Ex. B ¶ 1. She further claims to have engaged in work similar to that of other "Retirement Analysts" in Chicago. Id. ¶¶ 6, 8. Finally, opt-in plaintiff Asta Gurklys states in her declaration that Mercer referred to her "as an actuarial analyst and retirement analyst," and that her duties were similar to those of "Retirement Analysts" based on her familiarity with her colleagues' work. Pls.' Reply, Ex. A ¶¶ 1, 6, 8.

Defendants argue that plaintiffs cannot rely on their own declarations to meet their burden and cite several cases in which courts conditionally certified collective actions based on greater evidentiary showings. Defs.' 2d Mem. at 7-8. But courts in this district have granted conditional certification under circumstances similar to those present here. For example, defendants observe in their opposition brief that in *Rottman v. Old Second Bancorp, Inc.*, No. 09 C 7840, 2010 WL 3386007 (N.D. Ill. Aug. 25,

-7-

2010), the court granted conditional certification based on "declarations from named plaintiffs and an additional putative class member" where these individuals "attested to personal knowledge" that occupants of their positions were uniformly subject to a company policy "tending toward non-exempt status." *Id.* at 9. As noted above, plaintiffs and Ms. Gurklys all provided declarations in which they claimed to have personal knowledge of similarities between their work and that of other putative notice recipients.

The Consulting Analyst and Actuarial Analyst job descriptions further bolster plaintiffs' arguments. Defendants argue that written job descriptions are not proper evidence of whether plaintiffs are similarly situated because they "do not constitute evidence of actual job duties." *See* Def.'s 2d Mem. at 7. Though some courts have declined to rely on job descriptions as evidence of commonality, other courts have given them significant weight. *Compare Smallwood*, 710 F. Supp. 2d at 752 (granting conditional certification in part based on "the single company job description maintained by Defendant for all OSP Engineers for the years 2006, 2007, and 2008"), *with Forney v. TTX Co.*, No. 05 C 6257, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006) ("Whether similarly situated employees exist depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions"). Because, however, "plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay," the Court finds plaintiffs' job descriptions to be sufficiently probative for conditional certification purposes. *See Jirak*, 566 F. Supp. 2d at 849.

Defendants present other employees' declarations to support a contention that plaintiffs' day-to-day job duties differed significantly from those of putative notice

recipients.  Def.'s 2d Mem. at 10-14.  But the rigorous comparison of day-to-day job responsibilities urged by defendants is inappropriate at the conditional certification stage.  *Smallwood*, 710 F. Supp. 2d at 751 ("In arguing that this Court's 'similarly situated' analysis should presently focus on the day-to-day work activities performed by each class member, Defendants jump ahead to a more exacting standard at step two that is not appropriate at the step one analysis"); *see also Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006) ("Defendants point out differences in plaintiffs' job duties, places of employment, compensation plans, and experience levels.  At this stage of the litigation, defendants' arguments do not persuade the court that conditional certification is unwarranted.  The court has allegations and evidence before it that plaintiffs' job duties are similar.  That is all that is required in the notice stage").  The question now is not whether the case should go to trial as a collective action, but whether other employees who are similarly situated should be advised the case is pending so they can decide whether to join it.  The claimed differences in day-to-day responsibilities will be of greater significance at the second stage, when the Court reexamines the conditional certification in light of the evidence as it has developed by that point.

Finally, the March 2010 reclassification of Consulting Analysts and Actuarial Analysts to non-exempt status provides some evidence of a common policy affecting plaintiffs and putative notice recipients.[1]  Defendants cite cases outside of this district in arguing that "[r]eclassification cannot serve as evidence of wrongdoing."  Defs.' 2d

---

[1] In denying plaintiffs' first motion, the Court concluded that this evidence was not sufficient by itself, not that it was irrelevant.

Mem. at 6.  Courts in this district, however, have disagreed.  *See, e.g., Smallwood*, 710 F. Supp. 2d at 752 ("A common policy or plan appears to exist because on May 16, 2009, all OSP Engineers were uniformly reclassified as non-exempt employees, making them eligible for overtime payments.  In evaluating the merits of conditional certification under § 216(b), *these considerations are far more important than any similarities or dissimilarities regarding the nuts and bolts of the employees* [sic] *day-to-day duties.*") (emphasis added); *Olmsted v. Residential Plus Mortg. Corp.*, Nos. 08 C 142, 08 C 419, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008) (granting conditional certification where plaintiff alleged that defendants "routinely misclassified employees as exempt from FLSA requirements").

By providing evidence that they and putative notice recipients shared common job duties and qualifications and were subject to the *en masse* March 2010 reclassification, plaintiffs have made the "minimal showing necessary for conditional certification."  *Jirak*, 566 F. Supp. 2d at 850.  The Court thus grants plaintiffs' motion in part.  Plaintiffs are authorized to send notice of the pendency of the case to current and former Consulting Analysts and Actuarial Analysts.

**2.     Notice**

Having determined that plaintiffs' motion for conditional certification should be granted, the Court considers whether plaintiffs' proposed form of notice is adequate and fair.  Because non-party plaintiffs must opt into a collective action, the efficiencies enabled by such actions can only be realized if "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make

informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). To this end, a court that conditionally certifies a collective action assumes "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71. In exercising this responsibility, the Court "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

> Defendants propose the following changes to plaintiffs' notice form:
>
> a. References to "non-applicable job titles" on the form should be removed.
>
> b. Paragraph V should be altered to inform notice recipients "that opt-in Plaintiffs may have their depositions taken . . . [and] that they may be liable for a proportionate share of Defendants' costs" if defendants prevail.
>
> c. Emphasis should be added to a sentence stating that the Court has taken no position on the merits of the case and should not be contacted by notice recipients with questions.
>
> d. For privacy reasons, plaintiffs should not be permitted to request notice recipients' phone numbers and e-mail addresses or to use e-mail notice.

Defs.' Mem. 14-15, Oct. 19, 2010.

The Court agrees with proposal (a) and agrees with proposals (b) and (d) in part. First, plaintiffs must modify all descriptions of notice recipients so that they refer only to "Current and Former Senior Defined Benefit Consulting Analysts and Senior Defined Benefit Actuarial Analysts." Second, plaintiffs must also add the following language to paragraph V of the draft notice: "While the suit is proceeding, you may be required to provide information, have your deposition taken, and testify in court." Defendants' proposed language regarding costs is unnecessary. Third, in the interest of promoting

effective notice, plaintiffs may not provide notice via e-mail. They may, however, obtain the notice recipients' phone numbers. *See Russell*, 575 F. Supp. 2d at 939 (concluding that plaintiff's "interest in locating and contacting similarly situated employees outweighs the limited privacy interests in a home telephone number"). Defendants' proposal (c) is unnecessary, because plaintiffs' proposed notice already makes it clear that the Court has taken no position on the merits and that notice recipients should not contact the Court for information.

**Conclusion**

For the reasons stated above, the Court grants plaintiffs' motion for conditional certification notice [docket no. 58] in part, but directs plaintiff to modify their proposed notice as indicated above. The case is set for a status hearing on January 10, 2011 at 9:30 a.m. for the purpose of approving the final form of the notice. The Court directs counsel to confer before that date to ensure that plaintiffs have the information necessary to send notice promptly following approval.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 23, 2010